IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | CRIMINAL ACTION |
| | : | NO. 16-293 |
| | : | |
| SEAN FAGER | : | |

**MEMORANDUM**

**SCHMEHL, J.**                                                                                          **August 12, 2025**

Defendant was indicted on two counts of production of child pornography in violation of 18 U.S.C. §§ 2251(a) and (e) and §§ 2256 2(A) (iv) and (v), one count of transportation of child pornography in violation of 18 U.S.C. § 2252(a)(1) and two counts of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Defendant pleaded guilty to all counts of the indictment pursuant to a written plea agreement in which the parties stipulated, under Federal Rule of Criminal Procedure 11(c)(I)(C), to a specific sentence of 216 months of imprisonment; a lifetime term of supervised release; a fine, if any, as determined by the Court; and a $500 special assessment. On May 20, 2019, Defendant was sentenced to 216 months' (18 years') imprisonment on each count, to run concurrently; followed by concurrent lifetime terms of supervised release on each count; no fine, and a $500 special assessment. Presently before the Court is the Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). For the reasons that follow, the motion is denied.

The government informs the Court that Defendant is 60 years old and is serving his sentence at FCI Fort Dix, with a minimum release date of December 15, 2029. He has been in federal custody since July 7, 2016. Defendant has served approximately 130 months, and has credit for good conduct time of approximately 18 months, for total

1

time served of approximately 148 months or approximately 68% of his sentence. He has not committed any disciplinary infraction during his time in custody.

Defendant invokes the "compassionate release" provisions of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act on December 21, 2018. "Under 18 U.S.C. § 3582(c)(1)(A), commonly referred to as the 'compassionate release' provision, district courts may reduce a term of imprisonment when warranted by 'extraordinary and compelling reasons.' " *United States v. Stewart*, 86 F.4th 532, 533 (3d Cir. 2023) (quoting 18 U.S.C. § 3582(c)(1)(A)). "If a court finds those reasons exist, it then turns to the sentencing factors in 18 U.S.C. § 3553(a) to determine whether compassionate release is appropriate." *Id.* (citing § 3582(c)(1)(A)(i)). The relevant portion of this statute states:

> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; ...
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

The First Step Act directs analysis, for extraordinary and compelling reasons, to the Sentencing Commission's applicable policy statement, which is § 1B1.13, and it provides in relevant part that, after considering the section 3553(a) factors, the court may reduce a term of imprisonment if it determines that—

(1) (A) Extraordinary and compelling reasons warrant the reduction; ....

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (Policy Statement).

The United States Sentencing Guidelines explain what constitutes "extraordinary and compelling" reasons for a sentence reduction under § 3582(c)(1)(A), in pertinent part, as follows:

(b) EXTRAORDINARY AND COMPELLING REASONS.--Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT.--

(A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B) The defendant is--

(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D)The defendant presents the following circumstances--

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.
>
> 2. AGE OF THE DEFENDANT.--The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13(b)(1) and (2).

Defendant seeks compassionate release based essentially on a litany of physical and mental medical ailments he claims he suffers from, including extreme incontinence, bulging and ruptured disks in his back and neck, bi-polar disorder, schizophrenia, memory loss, vertigo, severe diabetes, permanent hearing loss, psychotropic pills, TMJ [temporomandibular joint dysfunction], failing eyesight, and severe brain injury. [ECF 84.] In a subsequent filing, he claims he suffers from cirrhosis of the liver and kidney failure. [ECF 88.] In yet another subsequent filing, Defendant claims he suffers from epilepsy, seizure disorder, disease of the spleen, thalassemia, gastric enlarged, nocturia, spinal issue, thoracic spine issues, bladder stones, cystoscopy and botox injections, etiology, cataracts, sphincter not working, major depression disorder, anxiety disorder, anemia, hypertension, borderline personality disorder, allergic rhinitis, chronic rhinitis and vitamin deficiencies. [ECF 95.]

The Defendant's medical records from the Bureau of Prisons confirm he suffers from the following conditions: allergic rhinitis [hay fever], anemia, unspecified anxiety disorder, borderline personality disorder, epilepsy/seizure disorder, essential (primary)

4

hypertension, major depressive disorder, recurrent, other benign neoplasm of skin, unspecified, schizoaffective disorder, thalassemia [blood disorder], unspecified, Type 2 diabetes mellitus, unspecified hearing loss, schizoaffective disorder: depressive type. Gov.'s Exh. B at p. B067. There are simply no objective medical records which validate Defendant's claims of severe brain injury, cirrhosis of the liver or kidney failure.

The Defendant's medical records from the Bureau of Prisons confirm that Defendant takes the following medications to treat his documented conditions: Aripiprazole 10 MG Tab (for mental health conditions) Atorvastatin 40 MG TAB (for hyperlipidemia) Benztropine 1 MG Tab (for mental health conditions) Buspirone 15 MG TAB (for anxiety) Carvedilol 3.125 MG Tab (for high blood pressure) Desmopressin Acetate 0.2 Mg Tab (for incontinence) Diabetic-Easy Touch Test In Vitro Strip (to test blood sugar) Divalproex ER 24 Hour Tab 500 MG (for seizures) Glucose 4 GM Tab (for low blood sugar) Insulin Glargine-yfgn 100 UNIT/ML (for diabetes) Lisinopril 10 MG Tab (for high blood pressure) Metformin HCl 1000 MG Tab (for diabetes) Oxybutynin 5 MG Tab (for urinary frequency) Sertraline HCl 100 MG Tab (for depression) *Id*. at pp. B193-B200.

Defendant, who has not attained the age of 65, simply does not present a terminal illness, or demonstrate that any of his physical and mental maladies, individually or collectively, limit his ability to provide self-care while incarcerated at Fort Dix. According to the government, Defendant is currently classified as "care level 2" for both medical status and mental health. In the four-level hierarchy applied by BOP (with level 4 being the most serious), level 2 refers to inmates who "'are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or

5

evaluation by medical specialists, may be required from time to time.'" *Id*., quoting https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf, at p. 4. The medical records reveal that Defendant's medical issues are being managed by the BOP. He receives frequent medical attention, can consult medical professionals, has access to medications and is able to provide self-care while in prison.

As long as the Prison is able to monitor and manage an inmate's medical conditions with medication, no extraordinary and compelling reason exists for the inmate's release. *United States v. Pigford*, 2023 WL 2285825 at * 3 (E.D. Pa .2023). "Chronic conditions managed in a Facility are not a sufficient basis for compassionate release." *Id*.

To the extent, Defendant claims the medical care he is receiving is inadequate, his remedies include an available administrative process for an inmate to present complaints of inadequate medical care or to bring constitutional claims based on inadequate medical care. Clearly, Defendant has failed to establish a concrete medical reason for an early release.

Defendant has failed to establish sufficient extraordinary and compelling reasons that warrant a reduction in his sentence. Even if he could establish a medical reason for his release, the factors set forth in 18 U.S.C. § 3553(a) militate against compassionate release. Those factors include, among other things, "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, ... to provide just punishment for the offense[, and] ... to afford adequate deterrence to criminal conduct," *id*. § 3553(a)(2)(A)–(B).

In this case, forensic searches of six computers seized from Defendant's home revealed over 300 digital images of suspected alleged child pornography. The majority

of these images depicted unknown nude female infants and children, between the ages of one and five years old, being penetrated vaginally by an adult male penis. In addition, a search of one of the computers yielded hundreds of pictures of children which appeared to have been taken in Defendant's home, including some digital photographs of two five year old children (a boy and a girl) in diapers tied by the wrists and ankles with black fabric straps in "bondage type fashion" to a wooden dining room chair and to the railing of an oversized crib. The children had been entrusted to the care of Defendant and his wife by a family friend.

    During the execution of a search warrant, agents seized a photograph of the two small children from a wall in the dining room, a black and blue checkered blanket that had appeared as a background in some of the digital images of one of the small children, a wooden dining room chair, a diaper bag found in Defendant's computer room closet that contained the black straps used to bind the two children to the wooden dining room chair and the crib railing, two spindles from an adult-sized crib, one homemade electric shock device from under defendant's bed, and a notebook with crib design schematics from under the kitchen table. Approximately 15 photographs of Defendant engaged in bondage fetish and diaper fetish behavior were also seized. Authortities also seized various cameras and DVDs and a folder containing medical records and patient information of children from a local pediatrician's office.

    Defendant also pleaded guilty to uploading, via a Dropbox account, four graphic CSAM videos ranging in length from 47 seconds to 14 minutes and 27 seconds, depicting boys ranging in age from approximately 6 to 14 years old engaged in masturbation, performing oral sex upon each other, and a 10-year old boy engaged in oral sex and anal sex with adult males. Defendant also pleaded guilty to amassing a collection of more than 400 digital images and several videos (at least two of which were

recognized by the National Center for Missing and Exploited Children) of child pornography, all found on his various computers.

      Based on the level of medical care Defendant is receiving, the seriousness of his criminal conduct and the potential danger that Defendant presents to the community at large, release at this point in time is simply inappropriate.